# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 29 2020, 9:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia Phillips Smith
Law Office of Cynthia P. Smith
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Jon P. McCarty
Covington, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Brian A. Hill,

*Appellant-Petitioner,*

v.

Annette Hill,

*Appellee-Respondent*

September 29, 2020

Court of Appeals Case No.
19A-DR-2831

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1609-DR-544

**May, Judge.**

[1]    Brian A. Hill ("Husband") appeals the trial court's final decree of dissolution. He raises one issue on appeal, which is whether the trial court erred in finding that monies Husband's mother, Betty Hill ("Husband's Mother"), gave to Husband and Annette Hill ("Wife") were gifts rather than loans. We affirm.

# Facts and Procedural History

[2]     Husband and Wife lived together at 2023 Eagle Drive, Battle Ground, Indiana ("Marital Residence") from early 2000 until their date of separation in June 2016. Husband bought the Marital Residence before the marriage for approximately $67,900, and Husband and Wife moved into the house at the time of purchase. MNC Mortgage lent Husband $54,300 so that he could purchase the house, and Husband's Mother gifted Husband cash to cover the down payment on the Marital Residence. On March 22, 2001, Husband obtained a home equity loan from Lafayette Savings Bank for $15,000 to build a garage.

[3]     Husband and Wife married on July 7, 2001. They eventually ran into trouble making their mortgage payments, and Husband's Mother made the mortgage payments for them. Husband's Mother also helped the couple purchase vehicles, pay their utility bills, and cover other expenses. Husband's Mother used a ledger to document these payments. Husband and Wife occasionally reimbursed Husband's Mother. The payments from Husband and Wife to Husband's Mother were irregularly timed, for varying amounts, and did not include any interest.

[4]     Husband's Mother paid off the second mortgage on the Marital Residence. In March 2015, Husband and Husband's Mother decided to refinance the original mortgage, and they signed a promissory note to Beacon Credit Union for $56,000. Husband's Mother offered her savings account as collateral securing

the promissory note. When payments on the promissory note came due, Husband's Mother would put money into Husband's account, and Husband would then use that money to pay Beacon.

Husband filed for divorce on September 7, 2016. The court held the final dissolution hearing on June 27, 2019. At the final dissolution hearing, Husband's Mother testified Husband and Wife owed her tens of thousands of dollars in reimbursement for the payments she made towards the mortgages on the Marital Residence and other miscellaneous expenses. Both Husband and Husband's Mother testified that whatever balance remained at the time of death of Husband's Mother would be deducted from Husband's share of her estate.

The trial court entered a final decree of dissolution on September 4, 2019. In the decree, the court found:

> 21. **Marital Residence**. The parties resided at 2023 Eagle Dr., Battleground, IN 47920 during their marriage. (Hereafter referred to as "marital residence"). Husband originally purchased the marital residence in his name only on January 4, 2000, before the marriage, for $67,900.00. (H's Ex. J). He paid for the property with an MNC Mortgage for $54,300.00 and the balance of $13,600.00 was paid in cash (H's Ex. I & J). The testimony provided indicates the cash was a gift from [Husband's Mother]. On March 15, 2001, Husband took out a home equity loan with Lafayette Savings Bank for $15,000.00 to build a garage on the property. (H's Ex. Q). The parties agree that at the time of the filing of this divorce, the value of the marital

residence was $133,000.00. (W's Ex. 1).[1] The marital residence remains in Husband's name only. There is no existing debt on the marital residence due to Husband's [M]other paying off the indebtedness which is discussed in further detail below. The Court determines the value of the marital residence is $133,000.00 less the cash gift to husband of $13,600 for a total value of $119,400.00.

The marital residence is awarded to Husband with Wife having no further interest thereon. Husband shall assume all property taxes, maintenance, and insurance payments as they may come due and hold Wife harmless thereon.

(App. Vol. II at 19-20) (emphasis and footnote in original).

[7] The dissolution decree analyzed whether the monies Husband's Mother paid towards the mortgages and other expenses were gifts or debts of the marital estate. The trial court concluded the payments made by Husband's Mother toward the mortgages were gifts. The court explained:

There was no agreement by Husband and Wife to make regular scheduled payments with interest to Husband's [M]other as reimbursements for any payments [Husband's M]other made on the Beacon loans. . . . [Husband's] Mother testified she expected to be paid back 'at some point' but offered no further details on repayment amounts, deadlines, interest due, or consequences for non-payment. . . There also has been no evidence presented to cause the Court to believe Husband's [M]other would seek

---

[1] The Appraisal did not include appliances.

repayment from Husband for payments she made toward the mortgages.

(*Id*. at 24-25.) The court also found that $66,773.00 Husband's Mother gave the couple throughout the course of their marriage to cover vehicle repairs, medical bills, and other miscellaneous expenses was a gift. The court found that while the couple made sporadic payments to Husband's Mother,

> [a]t no time in the 15 years that the Husband's [M]other alleges she loaned the parties money did the [Husband's M]other ever discuss with the parties any terms that would be required to create an enforceable loan or debt. There was no evidence of written agreement or promissory note, and no defined payment plan that established payment dates or accrued interest. Further, no demands were ever made by [Husband's M]other for payment and no consequences imposed upon the parties for failure to make payments to [Husband's M]other.

(*Id*. at 26.) The court also noted that while Husband's Mother and Husband testified any amount not repaid by the time of Husband's Mother's death would be deducted from Husband's inheritance, "neither Husband nor [Husband's M]other produced a will or estate plan or other such documents to show a legally enforceable debt against mother's estate." (*Id*.) Given the significant gifts Husband received from Husband's Mother, the court concluded "the presumption of an equal division has been rebutted in favor of Husband, however slightly, to justify a division of the marital estate by awarding Husband 60% and Wife 40% of the marital estate." (*Id*. at 28.)

Husband filed a motion to correct error on October 3, 2019, arguing in part that the trial court erred in finding the monies Husband's Mother gave the couple were gifts and not loans. The trial court held a hearing on Husband's motion on November 5, 2019, and subsequently denied the motion. Husband then initiated the present appeal.

# Discussion and Decision

The trial court's dissolution decree lists findings of fact and conclusions of law. Therefore, we apply a two-tiered standard of review.[2] *Hernandez-Velazquez v. Hernandez*, 136 N.E.3d 1130, 1136 (Ind. Ct. App. 2019).

> We determine first if the evidence supports the findings and second whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if clearly erroneous. We neither reweigh the evidence nor reassess witness credibility. Instead, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them.

*Id.* (internal citations omitted). If a party does not challenge the factual findings of the trial court, we must accept them as true. *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992).

---

[2] Husband does not argue the trial court erred when it denied his motion to correct error, and our standard of review for an appeal of a motion to correct error directs us to consider the underlying order, here the final order of dissolution. *See In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008) (review of motion to correct error includes review of underlying order).

In a dissolution of marriage action, the court is required to divide all property of the parties, whether the property was owned by either spouse before the marriage, acquired be either spouse after the marriage but before separation, or acquired through the parties' joint efforts. Ind. Code § 31-15-7-4. "Marital property includes both assets and liabilities." *McCord v. McCord*, 852 N.E.2d 35, 45 (Ind. Ct. App. 2006), *trans. denied*. Courts divide marital property pursuant to a two-step process. *Thompson v. Thompson*, 811 N.E.2d 888, 912 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*. First, the trial court determines what property should be included in the marital estate. *Id.* "After determining what constitutes marital property, the trial court must then divide the marital property under the presumption that an equal split is just and reasonable." *Id.* If the trial court deviates from this presumption, the court must state the reasons for doing so. *Id.* at 912-13. A party challenging the trial court's division of marital debts and assets must overcome the strong presumption that the court considered and complied with the law. *Id.* at 913. We review a trial court's division of marital property for an abuse of discretion. *Smith v. Smith*, 938 N.E.2d 857, 860 (Ind. Ct. App. 2010). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Husband argues the evidence does not support the trial court's findings that the monies Husband's Mother gave the couple were gifts rather than loans. Therefore, Husband contends, the court abused its discretion in dividing the marital estate and awarded Wife a "windfall" by excluding the alleged debts

owed to Husband's Mother. (Appellant's Br. at 19.) In *Crider v. Crider*, the husband's father "loaned" the husband large sums of money on several occasions, but the husband never made any payments on the loans. 15 N.E.3d 1042, 1049 (Ind. Ct. App. 2014), *trans. denied*. The husband argued the sums of money were liabilities of the marital estate. *Id*. at 1061. We explained "courts are not required to accept one party's characterization of funds received from a third party as a debt as opposed to an outright gift." *Id*. at 1062. We held that, even though the husband and his father executed a promissory note, the payments were gifts rather than loans because the husband never made any payments on the promissory notes despite the due dates having passed, there was no evidence the father requested payment of the note, and there was testimony that the purported loans were made as an estate planning device to reduce the size of the father's estate-to-be. *Id*. Similarly, in *Macher v. Macher*, we held the trial court did not err in finding monies husband's parents gave the couple to purchase a house were gifts rather than loans. 746 N.E.2d 120, 124 (Ind. Ct. App. 2001). We noted there was a lack of documentation supporting that the payments were loans, there was no agreement regarding interest or repayment terms, and the couple had gone years without making a payment to husband's parents. *Id*.

[12] Just like in *Crider* and *Macher*, the arrangements surrounding the couple's payments to Husband's Mother were informal, and the payments were infrequent. Husband's Mother allowed Husband and Wife to reimburse her at their convenience and in amounts of their choosing. Husband and Husband's

Mother did not execute an instrument that contained a payment plan or repayment schedule, nor did they discuss an interest rate or fees. Husband even testified, "My mom wasn't doing it on loan. She was doing it to help and help her son, grandkids." (Tr. Vol. II at 64.) While Husband signed the promissory note refinancing the first mortgage on the Marital Residence, Husband's Mother holds the collateral and is the person actually making payments on the note. Even though both Husband and Husband's Mother testified that Husband's inheritance will be encumbered if Husband's Mother is not reimbursed by the time of her death, Husband did not put forth any documentary evidence to support this assertion, such as Husband's Mother's will or estate plan. Thus, we hold the evidence supported the trial court's finding that the monies Mother gave to the couple during their marriage were gifts rather than loans, and the trial court did not abuse its discretion by dividing the marital estate accordingly. *See In re Marriage of Church*, 424 N.E.2d 1078, 1081 (Ind. Ct. App. 1981) (holding money wife's parents gave couple to purchase a fishing boat was a gift rather than a loan, and therefore, not a liability of the estate).

# Conclusion

[13] The evidence supported the trial court's finding that monies Husband's Mother gave to Husband and Wife throughout the course of their marriage to cover housing and other expenses were gifts rather than loans. While Husband and Wife did make payments to Husband's Mother to cover some of the expenses

Husband's Mother paid for them, the payments were made at the couple's discretion. Further, while the Marital Residence was encumbered by a promissory note, Husband's Mother was the one actually making payments on the promissory note, and she owned the collateral secured by the note. Accordingly, we affirm the trial court.

[14] Affirmed.

Robb, J., and Vaidik, J., concur.